JOSEPH M. T. PARTELLO, Respondent, v. MISSOURI PACIFIC RAILWAY COMPANY, Defendant.

Kansas City Court of Appeals, January 10, 1910.*

1. **JURISDICTION: Appellate: Amount in Dispute.** Where judgment was rendered in favor of plaintiff for $5,500 and subsequently after the accrual of interest in the amount of $132 plaintiff remitted $1,000 and agreed that judgment might be rendered on the verdict for $4,500 the effect of the *remittitur* was to nullify the judgment and to require the court to enter a new judgment for the amount of the verdict less the sum remitted. The new judgment could have been discharged by the payment of $4,500 which is the amount in dispute.

*This opinion was originally filed January 27, 1908. Thereafter the Supreme Court ordered the case transferred to that court (State ex rel. Broaddus, 212 Mo. 685), because the amount involved exceeded the jurisdiction of this court. When the jurisdiction of this court was increased the case was returned here, and the opinion was refiled.

2. **EVIDENCE: Physical Condition: Remoteness.** Where plaintiff's evidence tended to show injury to his wife's private organs and nervous system rendering her an invalid and defendant introduced evidence to show that the womb was enlarged from causes antedating her injuries, and that the perineum had been lacerated in childbirth some years prior to her injury, evidence that five years and more prior to her injuries she was strong and vigorous, was not open to the objection of being too remote.

3. ———: ———: ———: ———. It was material for plaintiff to show that from girlhood up to the time of the injury his wife was robust and vigorous and apparently in perfect health.

4. **INSTRUCTIONS: Enlarging Issues.** Where plaintiff specifies certain injuries in his petition he will be held to his specifications both in his proof and his recovery.

5. ———: ———: ———. It would have been better if the consideration of the jury had been expressly confined to the injuries specified in the petition, but the omission of such express restriction would not constitute reversible error unless the evidence discloses other injuries than these pleaded.

6. ———: ———: ———: **Scope of Testimony.** Where there was evidence that plaintiff's wife complained at first of pain in her arm, but no attempt was made to show the existence of such injury, it is inconceivable that the jury could have considered such injury in making up its award of damages.

7. ———: ———: ———: ———: ———. Where the impairment of the ovaries and the subsequent formation of an abscess were natural results of the injuries pleaded, the jury were properly permitted to consider them in its estimate of the damages.

8. ———: ———: ———. Where it is alleged that the injuries are permanent and that loss of society and services has resulted therefrom and the condition which produced such loss is still existent and will continue such averment is a sufficient equivalent for the specific statement that such loss will continue.

9. **DAMAGES: Excessive Award.** Where the evidence shows that plaintiff's wife was a strong vigorous woman in perfect health and by the injury she was left broken in health and a helpless and incurable cripple. a judgment of $4,500 was not excessive, and the fact that the jury awarded $1,000 in excess of that amount is not sufficient, in itself, to warrant the influence that the jury were guided by improper motive.

Appeal from Jackson Circuit Court.—*Hon. Edward P. Gates,* Judge.

AFFIRMED.

*Elijah Robinson* for appellant.

*Reed, Atwood, Yates, Mastin & Harvey* for respondent.

JOHNSON, J.—Appellant presents a motion to certify this cause to the Supreme Court on the ground that, as the amount in dispute exclusive of costs exceeds the sum of forty-five hundred dollars, we have no jurisdiction. On the 14th day of April, 1906, the jury returned a verdict in favor of plaintiff in the sum of fifty-five hundred dollars. April 17th, defendant filed its motions for a new trial and in arrest of judgment which were continued until the June term of the circuit court when they were overruled on the 9th day of June. June 12th, defendant filed a motion to set aside the order of the court overruling the motions. July 5th, plaintiff filed a remittitur as follows: "Comes now plaintiff to said cause and remits one thousand dollars ($1000) of the verdict rendered and consents and agrees that judgment shall be rendered on the verdict for forty-five hundred dollars ($4500)." July 14th, the court made the following order: "Defendant's motion to set aside order overruling motion for new trial, is by the court sustained, and, it appearing to the court a remittitur of $1000 from the verdict having been made, said motion for a new trial is overruled, and excepted to by defendant." September 8th, defendant filed bond and affidavit for appeal and asked that the cause be sent to the Supreme Court, but, instead, the appeal was allowed to this court. It is the contention of defendant that, since interest in the sum of $132 had accrued on the judgment at the time the remittitur was entered, the amount in

dispute then was four thousand six hundred and thirty-two dollars ($4,632).

The statute fixing the jurisdiction of the courts of appeal is as follows: "The St. Louis Court of Appeals and the Kansas City Court of Appeals shall have jurisdiction of appeals and writs of error in all cases where the amount in dispute, exclusive of costs, shall not exceed the sum of forty-five hundred dollars." (Laws of 1901, p. 107). Without taking interest on the judgment into account, the sum remitted reduced the amount in dispute to $4500—a sum within our jurisdiction, and we think defendant is in error in saying that if it "had concluded to pay the judgment less the remittitur on the day the remittitur was entered and the motion for new trial overruled, it would have been compelled to pay $4,632." It sufficiently answers this argument to refer to the rule well settled in this State that the effect of the filing of a remittitur is to nullify the judgment and to require the court to enter a new judgment for the amount of the verdict less the sum remitted. [Schilling v. Spick, 26 Mo. 489; Haynes v. The Town of Trenton, 108 Mo. 123; Dawson v. Waldheim, 81 Mo. App. 636; Dawson v. Waldheim, 89 Mo. App. 245. ] The judgment from which the order of appeal was allowed was that rendered on the 14th of July, the day the remittitur was entered and the motions for new trial and in arrest overruled. Had defendant elected to pay the judgment on that day, it could not have been compelled to pay more than $4,500 in satisfaction thereof, and, this being the amount in dispute, it follows that the cause falls within the jurisdiction of this court.

The motion to certify to the Supreme Court is overruled.

This is an action brought by a husband to recover damages resulting to him from personal injuries sustained by his wife in consequence of the negligence of defendant. The injury of which complaint is made occurred in the morning of October 9, 1904. Plaintiff,

who, at the time, was a major in the United States Army in command at Fort Reno, was returning to that post with his family from a visit to the World's Fair at St. Louis. When they reached Kansas City, the party decided to make a side trip to Fort Leavenworth and became passengers on one of defendant's trains bound for that place. Shortly after the train left the union station and while it was running through defendant's yards at Kansas City, at a rate of speed of ten to fifteen miles per hour, the engine was deflected from the main track by a misplaced switch and caused to run on to a switch track where it collided with another engine. The impact was so severe that Mrs. Partello was thrown violently forward from her seat in the chair car and injured. The averments of the petition necessary to be considered in disposing of the questions presented by defendant are as follows:

"The said wife of plaintiff was greatly and permanently injured by being thrown violently from her seat in one of defendant's cars and being forcibly and violently thrown against some portion of the said car or its furnishings whereby the nose of Annie V. Partello was bruised and broken just below the forehead and permanently disfigured; also by being struck in the side and lower portion of her abdomen with great force and violence, thereby greatly bruising and mashing her said side and lower portion of her body and resulting in a displacement of the womb, by reason whereof the said Annie V. Partello suffered for a long period of time and does now suffer great and excruciating physical pain and mental anguish, and thereby causing a permanent injury to the womb and a permanent impairment of her menstrual functions. . . . that said injuries so inflicted upon the said Annie V. Partello by reason of the negligence of the defendant, its agents and servants as aforesaid, and by reason of the said blow to her side and lower portion of the abdomen as aforesaid her nerv-

ous system has been greatly and permanently impaired and shattered and she has suffered and will continue to suffer great physical pain and mental anguish on account thereof. . . . That prior to the injuries complained of the said wife of plaintiff was a strong, healthy woman, capable of performing all of her household duties at home, but that on account of said injuries, which are permanent and lasting in character and effect, and which were caused as aforesaid by the carelessness and negligence of defendant, she has become a weak, infirm and incurable invalid and has since the happening of the said injuries been confined almost constantly to her bed, and incapable of properly attending to any of her household duties or to the care of herself and family. That by reason of said injuries to his wife, plaintiff has been deprived of her society and services and has been put to great expense in procuring medicines, medical, hospital and surgical attention, including the services of a trained nurse, to-wit, to the amount of five hundred dollars ($500), and that the plaintiff will on account of the permanency of said injuries as aforesaid be compelled to expend large sums in the future for said purposes and will be compelled for a long period of time to keep a trained nurse constantly in attendance upon his said wife."

In the answer, defendant admitted that plaintiff's wife was a passenger on its train as alleged and was injured in an accident to the train, but denies "that she was injured to the extent or in the manner in said petition alleged, and denies that said accident was caused by any negligence or carelessness on the part of defendant."

It is conceded, in effect, that the evidence introduced by plaintiff was sufficient to take the case to the jury on the issue of defendant's negligence and that that issue was properly submitted in the instructions given. The judgment is attacked on three grounds: First, error in the admission of evidence; second, that the in-

struction on the measure of damages given at the request of plaintiff enlarged the scope of the issues defined in the pleadings; and, third, that the verdict was so grossly excessive it should be regarded as the result of passion and prejudice and not of a reasonable and impartial consideration of the evidence of the case.

The evidence which defendant contends was improperly admitted consists of the following portion of the deposition of General Baldwin, read by plaintiff: "Q.  Did you ever see Mrs. Partello ride horseback? A. Yes, sir, and I have ridden with her.  Q.  Did you ever take any rides of any considerable distance with her? A.  We used to ride from ten, twelve or sixteen miles chasing rabbits and wolves.  The whole garrison rode." The objection to this testimony was placed on the ground that the witness did not state the time of the incidents mentioned and it is argued that "the testimony as to Mrs. Partello's physical condition prior to the date of the accident should have been confined to within reasonable limits and it devolved upon the plaintiff when introducing evidence on that subject to fix the time referred to so that the court could say whether it was sufficiently close to the time of the accident to have any legitimate bearing on the issue, or so remote as not to have any legitimate bearing."

The witness testified he had known the Partellos intimately since 1879.  During a large portion of the time between that date and the Spanish war in 1898, he and Major Partello had been stationed at the same post. He said on cross-examination that the last time he had met Mrs. Partello prior to the date of her injury was at McPherson, Ga., in 1899.  Major Partello participated in the campaign in Cuba and later in the war in the Philippines.  Mrs. Partello lived in the Philippines while her husband was there and accompanied him in many of his expeditions.  From these facts, it appears that the horseback rides to which the witness referred must have occurred prior to 1899 and more than five years before

the injury, and the real question raised by the objection is whether evidence relating to the condition of health and vigor which existed at a time so distant from the date of injury has a direct or remote bearing on the issue of the extent of the injuries and their result on the health of Mrs. Partello.

Plaintiff introduced a number of witnesses who testified to his wife's condition of health before and after the injury. It was shown that in times of peace, while she lived at army posts, she participated in the social life of the garrison with zest and vigor, and during times of war endured many hardships in following her husband in his campaigns. All of the witnesses depict her as a woman of untiring energy, joyous spirits and, apparently, in perfect health. Since her injury, she has been a helpless invalid, unable to walk even the shortest distance without assistance and exhibits all the indications of serious nervous disorder.

On the other hand, defendant introduced a medical expert who testified, from an examination made by him shortly after the injury, he discovered that Mrs. Partello's womb was greatly enlarged, from some cause which must have antedated her injury, and, further, it was disclosed that some years before the injury, she suffered in childbirth from a severe laceration of the perineum which failed to heal properly and for which surgeons operated on her while she was in the hospital undergoing treatment for her injuries. This evidence was offered for the purpose of showing that the condition of ill health in which Mrs. Partello was at the time of the trial was due not wholly to the injuries received in the collision, but to other causes which preceded that occurrence and which must have impressed her physical appearance with the marks of ill health. Facing a controversy of this character, it not only was material, but, we think very important for plaintiff to show that his wife, even from girlhood to the hour of her injury was robust, vigorous and to all appearances in

perfect health.   We recognize the fact that in a far shorter period than five years a person's condition of health may be entirely changed, but evidence which tends to show that one is endowed by nature with certain marked physical characteristics such as strength, high spirits and freedom from illness, when accompanied by evidence that such condition has obtained to the time of an injury, has a direct evidentiary bearing on the question of whether or not physical impairment and ill health immediately following was caused by the injury.

In Wigmore on Evidence (section 225) the rule is stated that "in showing the existence at a given time of any physical condition (skill, strength, health, or the like), the existence of such condition at a prior or subsequent time is evidential.   The limits of time over which such evidence may range must depend on the circumstances of each case as to the probability of intervening changes and should be left entirely within the discretion of the trial judge."   Had defendant offered to show by witnesses that during the period covered by the observation of General Baldwin, Mrs. Partello had borne the appearance and acted in the manner of a person in bad health and had followed this up with evidence that such condition continued up to the date of the injury, it is very clear that such evidence would have been admissible on the ground that it would have a strong and direct relation to the question of the real cause of the physical impairment and disorder under which it is conceded she was suffering at the time of the trial.   The facts in question were not remote in an evidentiary sense and it was proper for the learned trial judge to receive them in evidence.

The instruction on the measure of damages which is made the second ground of attack by defendant is as follows:   "The court instructs the jury that if they find for the plaintiff they will assess his damages at such sum as they believe from the evidence will be a fair

compensation to the plaintiff for any necessary expenses he has incurred for drugs, medicines and hospital attention and services of nurses on account of the injuries to his wife, Annie V. Partello, not exceeding the sum of $325.00, and also for such loss of the services and society of his said wife, if any, as have been occasioned to plaintiff by reason of her said injuries, if any, and also for future loss of services and society of his said wife, if any, which the jury believe from the evidence will in all reasonable probability be occasioned to plaintiff on account of the injuries, if any, to his said wife in the future, in all not to exceed the sum of $10,500."

The first objection to the instruction is that it fails to confine the injuries on account of which damages may be awarded to those specified in the petition. Our attention is called to the fact brought out in the evidence that when she recovered consciousness after the injury, Mrs. Partello complained of pain in one of her arms and expressed the belief that it was broken, and to the further fact that one of the physicians gave it as his opinion that her ovaries were injured and that there were indications of a tumor or abscess in her right side, none of which injuries is specifically mentioned in the petition. We agree with defendant that plaintiff does allege the specific injuries suffered by his wife in consequence of the collision. The rule is too well settled to require the citation of authorities that where the pleader specifies in his petition he will be held both in his proof and recovery to his specification, and if the instruction under consideration authorized the jury to award damages for injuries outside of those specially averred, it will be condemned on the ground that it enlarged the scope of the issues tendered by the petition. It would have been better if the consideration of the jury had been expressly confined to the injuries specified in the petition. But the omission from the instruction of such express restriction will not constitute re-

versible error unless we should find defendant is right in his contention that the existence of other injuries than those pleaded are disclosed in the evidence. The instruction did not give the jury permission to travel outside of the evidence to conjecture injurious consequences and to award plaintiff damages for them and, therefore, if the scope of the evidence is no wider than that of the pleadings, we must assume that defendant was not prejudiced by the absence of the express restriction which defendant argues the instruction should have contained. Beyond the fact that Mrs. Partello at first complained of pain in her arm, there is no evidence of any injury to that member. Plaintiff in his evidence made no attempt to show the existence of such injury and it is inconceivable that a jury of sensible men could have considered such injury in making up its award of damages. The opinion of the physician that the ovaries had been injuriously affected and that there were indications of the presence of an abscess in the region of the affected parts, if accepted, did not present results outside of the scope of the injuries pleaded. These consequences, in the opinion of the expert were so intimately associated with the displacement and enlargement of the womb and with the impairment of the menstrual functions that they might be classed as a part of such injuries. Defendant was notified by the petition to meet the issue that plaintiff's wife, in consequence of the reception of a severe blow on the side and lower part of the abdomen, sustained a severe contusion which resulted in the displacement of and permanent injury to the womb and the permanent impairment of her menstrual functions. The purpose of the rule which limits a plaintiff in his recovery to damages for injuries he has specially pleaded is to protect the defendant against the possibility of being confronted with issues at the trial he was not advised to meet and for which, presumably, he has not prepared his defense. This purpose was fully accomplished in the averments of the pe-

tition under consideration. An impairment of the menstrual functions may result from an injury to any of the female organs of reproduction and the presence of a collection of pus, as in an abscess, may follow the inflammation of such injured organ. The impairment of the ovaries and the subsequent formation of an abscess were but natural results of the injuries pleaded and defendant was not prejudiced if the jury took them into consideration in its estimate of damages. Another objection made to the instruction is "that it directs the jury to consider future loss of services and society when no mention is made in the petition of future loss of services and society and no claim is made therefor." Loss of services and loss of society are special damages which must be specially pleaded and proved to entitle a plaintiff to include them among his elements of damage. And it is a rule quite generally recognized that a recovery for apprehended future consequences of an injury should not be permitted in the absence from the petition of an averment that such consequences are reasonably certain to result. It is alleged in the petition that the injuries are permanent, that the plaintiff's wife will continue to suffer great physical pain and mental anguish on account thereof; that "she has become a weak, infirm and incurable invalid" and that "plaintiff has been deprived of her society and services." It has been held in this State that the averment that injuries inflicted are permanent does not necessarily imply a loss of services (or earnings) and is not a legal equivalent of an allegation of such loss. This is on the theory that a person may be permanently injured and yet suffer no diminution of his earning capacity. But where it is alleged, not only that the injuries are permanent, but that loss of services and society has resulted therefrom and that the condition which produced such loss is still existent and will continue, no good reason can be given for saying that such averments do not afford a sufficient equivalent for the specific statement that such loss will

continue. Defendant does not and cannot say that it was misled or in any manner deprived of its right to an opportunity to prepare its defense against a recovery for future loss of services and society, and our ruling would be logically indefensible should we reverse the judgment on a point so barren of reason and substantial justice.

Passing to the final contention of defendant that the verdict is excessive, we perceive nothing in the record from which we would be justified in saying that the jury was actuated by passion or prejudice and not by a desire to perform its duty fairly and impartially. The defense that Mrs. Partello is in ill health, as the result of causes disconnected with the injuries received in the collision was met by substantial evidence and has been resolved by the triers of fact against defendant. That issue is settled by the verdict and we shall assume that Mrs. Partello's unfortunate condition is the direct result of the injuries. From the evidence of plaintiff, which, in our opinion not only is substantial but preponderates over that opposed to it, she was a strong, vigorous matron, in perfect health at the time of the injury. She was left by the injury completely broken in health, a helpless and incurable invalid. The learned trial judge who had the parties before him entertained the view, which we share, that damages in the sum of $4,500 were not excessive. The fact that the verdict was $1,000 in excess of that amount, of itself, is not sufficient to warrant the inference that the jury was guided by an improper motive. [McGraw v. O'Neill, 123 Mo. App. 691.]

The case was fairly tried and, in our opinion, the verdict and judgment are for the right party. Accordingly the judgment is affirmed. All concur.